1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  THE SHERWIN-WILLIAMS COMPANY, f/k/a SHERWIN-WILLIAMS | CASE NO. 13-CV-1947-LAB-WVG |
| 12  AUTOMOTIVE FINISHES CORP., | **ORDER ON MOTION TO DISMISS DEFENDANTS'** |
| 13          Plaintiff/Counter-Defendant, | **COUNTERCLAIMS** |
| 14     vs. | |
| 15  JJT, INC., d/b/a JOHN'S COLLISION | |
| 16  CENTER, and JOHN TYCZKI, an individual, | |
| 17          Defendant/Counter-Claimants. | |

18

19          Plaintiff Sherwin-Williams makes paints and coatings for cars. Defendant John's

20  Collision Center is a body shop. In May, 2011, the parties entered into a supply agreement.

21  John's agreed to buy all of its paints and coatings from Sherwin-Williams until the net

22  amount of its purchases equaled $250,000, and in return Sherwin-Williams agreed sell its

23  products to John's at a discount *and* to advance John's $40,000. Defendant John Tyczki,

24  the owner of John's, personally guaranteed the supply agreement.

25          In early 2013, John's stopped buying all of its paints and coatings from Sherwin-

26  Williams, and on February 28, 2013 it sent Sherwin-Williams a letter saying it would no

27  longer exclusively buy Sherwin-Williams products. Later, in April, 2013, John's returned the

28  $40,000 advance.

- 1 -

1    That led to this case.  Sherwin-Williams filed a complaint asserting breach of contract

2  claims against John's and Tyczki, and they filed counterclaims for breach of contract, breach

3  of implied warranties of merchantability and fitness, concealment and fraud, intentional

4  misrepresentation, negligent misrepresentation, breach of covenant of good faith and fair

5  dealing, and unjust enrichment.  The crux of the counterclaims is that Sherwin-Williams's

6  products were no good.  John's also takes the position that it was entitled to terminate the

7  supply agreement early provided it returned the $40,000 advance.

8    Now before the Court is Sherwin-Williams's motion to dismiss all counterclaims but

9  the first, for breach of contract.  As Sherwin-Williams sees it, this is a straightforward contract

10  dispute that John's is complicating needlessly with counterclaims that add nothing of legal

11  substance.

12  **I.    Legal Standard**

13    A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency

14  of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court must accept

15  all factual allegations as true and construe them in the light most favorable to John's.

16  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

17  2007).  To defeat Sherwin-Williams's motion to dismiss, the factual allegations of John's

18  needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative

19  level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "some threshold

20  of plausibility must be crossed at the outset" before a case can go forward.  *Id.* at 558

21  (internal quotations omitted).  A claim has "facial plausibility when the plaintiff pleads factual

22  content that allows the court to draw the reasonable inference that the defendant is liable for

23  the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

24  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

25  that a defendant has acted unlawfully."  *Id.*

26    While the Court must draw all reasonable inferences in a way that is favorable to

27  John's, it need not "necessarily assume the truth of legal conclusions merely because they

28  are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

1  1136, 1139 (9th Cir. 2003) (internal quotations omitted).  In fact, the Court does not need to

2  accept any legal conclusions as true.  *Iqbal*, 556 U.S. at 678.  A complaint does not suffice

3  "if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal

4  quotations omitted).  Nor does it suffice if it contains a merely formulaic recitation of the

5  elements of a cause of action.  *Twombly*, 550 U.S. at 555.

6  **II.    Discussion**

7       The Court will address the counterclaims in the order that John's asserts them.

8       **A.    Breach of Implied Warranties of Merchantability and Fitness**

9       Sherwin-Williams argues that the claims for breach of implied warranties must fail

10  because these warranties were explicitly waived in the supply agreement.  This is what the

11  supply agreement says:

12       **WARRANTIES.**  Customer will be entitled to participate in any product warranty program offered by Sherwin-Williams for which
13  Customer qualifies.  **EXCEPT AS PROVIDED IN A WARRANTY PROGRAM REFERRED TO IN THE PRECEDING SENTENCE**
14  **IN WHICH CUSTOMER IS PARTICIPATING, SHERWIN-WILLIAMS DISCLAIMS ALL WARRANTIES OF ANY KIND,**
15  **EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF**
16  **MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.  IN NO EVENT**
17  **SHALL SHERWIN-WILLIAMS BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES.**

18

19  Regardless of whether the Court applies Ohio or California law here, that's a valid waiver of

20  warranties substantively and stylistically, and John's doesn't appear to argue otherwise.  *See*

21  Ohio Rev. Code Ann. § 1302.29(B); Cal. Com. Code § 2316.  It argues, instead, that the first

22  sentence of the provision somehow saves its claim.  All the first sentence says, however, is

23  that John's is entitled to participate in any warranty program offered by Sherwin-Williams for

24  which it qualifies.  It doesn't, by itself, actually effectuate any warranties, and John's doesn't

25  allege that it is a participant in any warranty program that preserves the warranties of

26  merchantability and fitness.

27       John's does have a fall-back argument, though: "The warranty waiver provision of the

28  Agreement is unconscionable under California law."  (FACC ¶¶ 29.)  The Court disagrees.

1    First, the supply agreement is clear that it "shall be governed by the internal laws of the State

2    of Ohio."   John's tries to get past this by arguing that California has a materially greater

3    interest in this case than Ohio does, but that's only decisive if, in the final analysis, Ohio and

4    California law are in conflict.  *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459 , 466

5    (1992); *Facebook, Inc. v. Profile Tech. Ltd.*, 2014 WL 492369 at *2 (N.D. Cal. Feb. 5, 2014).

6    John's doesn't argue that they are.  The Court simply sees no reason not to look to Ohio law

7    here.  "In determining the enforceability of a choice of law provision in a diversity action, a

8    federal court applies the choice of law rules of the forum state, in this case California . . . .

9    [I]f the parties state their intention in an express choice-of-law clause, California courts

10   ordinarily will enforce the parties' stated intention."  *Hatfield v. Halifax PLC*, 564 F.3d 1177,

11   1182 (9th Cir. 2009).

12          Second, even under John's own Ohio authorities the waiver is not unconscionable.

13   *Pruitt v. Strong Style Fitness* instructs that "[i]n order to rescind an unconscionable contract,

14   the party seeking rescission must show both procedural and substantive unconscionability,"

15   and it further instructs that there's no procedural unconscionability where a plaintiff is

16   educated and the relevant contractual provision is clear.  2011 WL 4842485 at *4 (Ohio Ct.

17   App. Oct. 13, 2011).  This case is no different.  John's is an experienced business whose

18   owner had a prior relationship with Sherwin-Williams before signing the supply agreement,

19   and the supply agreement is just two pages (9 paragraphs) long with the waiver provision

20   appearing in bold and capital letters.  The claim that "Sherwin-Williams drafted the printed

21   form Agreement and exercised far superior bargaining power" is completely conclusory and

22   misaligned with the plain facts of this case.  Even assuming the Court were to find

23   procedural unconscionability here, it would not find its substantive counterpart.  The one

24   case on which John's relies, *Weco Supply Co., Inc. v. Sherwin-Williams*, involved a limitation

25   of remedies clause that disclaimed an entire class of damages "arising from any cause

26   whatsoever" and that, as the court explained, "gives Weco no recourse for any wrongful

27   conduct act against it, related to the . . . agreement or not, and whether intentional or not

28   2012 WL 1910078 at *1, 14 (E.D. Cal. May 25, 2012).  That is not this case.  Indeed,

1  Sherwin-Williams concedes that John's may be able to claim direct damages, repair and

2  replacement, and other UCC remedies under a breach of contract theory.

3         John's knowingly signed a supply agreement in which it clearly waived claims for

4  breach of the implied warranty of merchantability and the implied warranty of fitness for a

5  particular purpose.  The Court does not find these waivers embedded in the supply

6  agreement to be unconscionable.  The breach of implied warranties claims are therefore

7  **DISMISSED WITH PREJUDICE**.

8         **B.     Concealment/Fraud**

9         John's accuses Sherwin-Williams of concealment and fraud for "intentionally fail[ing]

10 to disclose the poor quality and defects of Sherwin-Williams's paint and related products."

11 (FACC ¶ 36.)   "As a direct and proximate result of Sherwin-Williams's deceit and

12 concealment," John's alleges, it was "induced to and purchased Sherwin-Williams's defective

13 paint and related products."  (FACC ¶ 38.)  John's accuses Sherwin-Williams of acting with

14 "intent to deceive."  (FACC ¶ 36.)  It claims that it was deceived to both enter into the supply

15 agreement *and* to refrain from terminating it.   (FACC ¶ 37.)   There are a number of

16 problems, though, with John's concealment and fraud claim.

17        The first is that John's fails to connect allegations of concealment and fraud to any

18 particular statements by Sherwin-Williams, leaving it to Sherwin-Williams (and the Court) to

19 flip back and forth in its counterclaims to piece the claim together.  John's does identify eight

20 representations and misrepresentations in its counterclaims, but it doesn't single out any in

21 its specific concealment and fraud claim to draw a clear connection.  (FACC ¶ 11(a)–(h).)

22 This is just a basic pleading problem.

23        The second  problem  is that the factual bases for the counterclaim—the

24 representations and misrepresentations the Court just alluded to—are copied verbatim from

25 counterclaims asserted in the related case involving a different body shop owned by Tyczki,

26 and in that case the supply agreement was signed in September, 2008.  As a result, the

27 claim asserted in *this* case doesn't map so neatly onto the facts alleged.  For example,

28 John's alleges that it complained to Sherwin-Williams about its products "[f]rom September

1  2008 through February 2013," which would suggest that after Tyczki used Sherwin-Williams

2  products for over two years in another body shop, and wasn't entirely pleased with them, he

3  signed another supply agreement for John's.  (FACC ¶ 11(g).)  That certainly cuts against

4  the claim that *John's* was deceived into signing a supply agreement; Tyczki was presumably

5  well aware of the perceived problems with Sherwin-Williams products when he signed the

6  supply agreement.  In fairness, John's rebuttal might be that, as it alleges, it was deceived

7  into not terminating the agreement just as much as it was deceived into signing the supply

8  agreement in the first place.  (*See* FACC ¶¶ 11, 37.)  But even then, it's hard to accept that

9  John's was defrauded into continuing the supply agreement after its owner was a dissatisfied

10  customer of Sherwin-Williams for over two years.

11       Third, the Court agrees with Sherwin-Williams that the concealment and fraud claim

12  lacks adequate particularity.  The parties don't disagree that Federal Rule of Civil Procedure

13  9(b) applies to John's concealment and fraud claim.  Under that Rule, "[a]verments of fraud

14  must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged."

15  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v.*

16  *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "The plaintiff must set forth what is false or

17  misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d

18  1541, 1548 (9th Cir. 1994).  John's tries to soften this standard by opportunistically quoting

19  a case from Ohio in which the court said "Rule 9(b) may be relaxed when there has been a

20  lack of discovery and the information needed for a plaintiff to achieve particularity is held

21  exclusively by the opposing party."  *In re Porsche Cars North America, Inc.*, 880 F.Supp.2d

22  801, 815 (S.D. Ohio 2012).  But that has little to no traction in a case like this where a

23  plaintiff's fraud allegations are based entirely on statements made to that plaintiff.  It

24  shouldn't be hard for John's to allege *who* from Sherwin-Williams said *what*, and *when and*

25  *where* it was said.

26       And yet many of its allegations come up short.  John's alleges, for example, that "[i]n

27  September 2008, Kurt Hammond (Sherwin-Williams) and Jose Garcia (Sherwin-Williams)

28  met with Counter-Claimant Tyczki at the Brigantine Restaurant, and made repeated

1  misrepresentations in order to induce Counter-Claimants to refrain from terminating the

2  subject Agreement . . . ." (FACC ¶ 11(c).) That allegation supplies the *when,* the *who*, and

3  the *where*, but not the *what*: "repeated misrepresentations" doesn't satisfy the particularly

4  requirement of Rule 9(b).    For another example, John's alleges that "[f]rom

5  August/September 2008 through 2012, Jose Garcia (Sherwin-Williams) made numerous and

6  repeated misrepresentations concerning the quality of Sherwin-Williams products and

7  service." (FACC ¶ 11(b).) This allegation supplies the *who*, but the *when*, the *where*, and

8  the *what* ("repeated misrepresentations concerning the quality of . . . products") are either

9  absent or too vague. Likewise, the allegation that "Jack Lowry (Sherwin-Williams) initially

10 made representations concerning the claimed high quality of Sherwin-Williams products

11 during negotiation of the Agreement" is clear only as to the *who*; the *when* is vague, the

12 *where* is vague, and the *what* is vague. (FACC ¶ 11(e).)

13       Fourth, for the purposes of a fraud claim that is compliant with Rule 9(b), there is a

14 difference between false representations and non-actionable puffery, and the Court agrees

15 with Sherwin-Williams that at least some of John's allegations fall on the puffery end of the

16 spectrum. *See Elias v. Hewlett-Packard Co.*, 903 F.Supp.2d 843, 858 (N.D. Cal. 2012).

17 "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a

18 reasonable consumer could not rely, and hence are not actionable." *Anunziato v.*

19 *eMachines, Inc.*, 402 F.Supp.2d 1133, 1139 (C.D. Cal. 2005). By contrast, "misdescriptions

20 of specific or absolute characteristics of a product [generally] are actionable." *Cook, Perkiss*

21 *and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

22 John's alleges that Sherwin-Williams "made numerous misrepresentations that Sherwin-

23 Williams products and services were the best in the industry, that they were a higher quality

24 than Spies Hecker/Dupont, that they had perfect color match, and that the colors would not

25 fade or dye-back, among other things . . . ." (FACC ¶ 11(a).) The Court would find that the

26 words "best in the industry," "higher quality," and "perfect color match" are all non-actionable

27 puffery; the representations about fading and dye-back come closer, the Court concedes,

28 to misdescriptions of a specific characteristic. *See Anunziato*, 402 F.Supp.2d at 1133.

1    Fifth, and finally, there's a clear difference between committing fraud to sell a product

2 on the one hand, and, on the other hand, simply selling a product that fails to meet a

3 customer's expectations or standards.   John's allegations are more of the latter variety.

4 Fraud requires: (1) a misrepresentation (such as a false representation or concealment); (2)

5 knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5)

6 resulting damage.  As the Court reads the allegations, they come up short at least on (2) and

7 (3)—knowledge of falsity with an intent to defraud.   Of the eight "representations and

8 misrepresentations" John's identifies, most don't allege that Sherwin-Williams *knew* its

9 claims were false and was just trying to dupe John's into doing business with it.  (*See* FACC

10 ¶¶ 11(a), 11(b), 11(c), 11(f), 11(h).)     The only allegation potentially giving rise to the

11 inference that Sherwin-Williams *knew* it was misrepresenting its products to John's is that

12 "Mr. Lowry admitted to Counter-Claimant Tyczki that there were serious and numerous

13 problems concerning the poor quality of the Sherwin-Williams products, and that those

14 products could not be corrected, and that the high-quality of the services provided by JB

15 Collision were not compatible with the substandard quality of the Sherwin-Williams products

16 and services." (FACC ¶ 11(e).) But even then, this statement doesn't necessarily mean that

17 Sherwin-Williams knew it was misleading John's all along.  It can also be read to suggest

18 that after an extended back-and-forth between the parties in which John's communicated

19 its discontent with Sherwin-Williams's products and Sherwin-Williams tried to answer its

20 complaints, Sherwin-Williams gave in and admitted that John's might never be satisfied with

21 its products.  That isn't necessarily fraud; it could be the result of two companies that simply

22 have different quality standards in mind.

23    In the ordinary case, the Court would invite John's to cure these problems by

24 amending his concealment and fraud claim.  Leave to amend "shall be freely given when

25 justice so requires," Fed. R. Civ. P. 15(a), and "this policy is to be applied with extreme

26 liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)

27 This would apply, also, to John's intentional and negligent misrepresentation claims.  *See*

28 *Gross v. Metropolitan Life Ins. Co., N.Y.*, 2013 WL 1628138 at \*3 (S.D. Cal. Apr. 12, 2013)

1    (citing *Neilson v. Union Bank of Cal*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003));  *but see*

2    *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 416–18 (C.D. Cal. 2012) ("Thus, the Court

3    holds that the California tort of negligent misrepresentation need not satisfy the heightened

4    pleading standard of Rule 9(b).").   But there is an additional argument Sherwin-Williams

5    makes that threatens all of John's tort claims irrespective of whether it can tighten them up.

6    That argument is that its remedies lie entirely in contract, and that the "economic loss rule"

7    forbids the layering of tort damages on top.

8         The economic loss rule "is that no tort cause of action will lie where the breach of duty

9    is nothing more than a violation of a promise which undermines the expectations of the

10   parties to an agreement."  *Oracle USA, Inc. v. XL Global Servs., Inc.*, 2009 WL 2084154 at

11   *4 (N.D. Cal. July 13, 2009).[1]  "Quite simply, the economic loss rule prevents the law of

12   contract and the law of tort from dissolving into one another."  *Robinson Helicopter Co. v.*

13   *Dana Corp.*, 34 Cal.4th 979, 988 (Cal. 2004).  It "requires a purchaser to recover in contract

14   for purely economic loss due to disappointed expectations, unless he can demonstrate harm

15   above and beyond a broken contractual promise."  *Id.*  While it's particularly relevant when

16   a party alleges that some commercial relationship negligently or inadvertently went awry, it

17   "can still bar fraud and other intentional tort liability if those claims do not arise independently

18   of the breach of contract claims."  *WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 WL

19   824297 at *4 (N.D. Cal. Feb. 28, 2014).  Indeed, the rule "hinges on a distinction drawn

20   between transactions involving the sale of goods for commercial purposes where economic

21   expectations are protected by commercial and contract law, and those involving the sale of

22   defective products to individual consumers who are injured in a manner which has

23   traditionally been remedied by resort to the law of torts."  *Robinson Helicopter*, 34 Cal.4th

24   at 988.

25        John's claims for concealment and fraud, intentional misrepresentation, and negligent

26   misrepresentation all seek the same thing:

27   _____

28   [1] The Court transitions to *California* law with respect to the economic loss rule because the claims John's asserts for fraud and misrepresentation arise under California law—not under Ohio law.  There is no disagreement between the parties on this point.

> As a direct and proximate result of Sherwin-Williams's [conduct], Counter-Claimants were induced to and purchased Sherwin-Williams's defective paint and related products.  In purchasing and using Sherwin-Williams's defective paint and related products, Counter-Claimants have suffered damages including, without limitation, the costs of repeat repair or paint jobs on Counter-Claimants' customers' vehicles made necessary by Sherwin-Williams's defective products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to Counter-Claimants' professional community and amongst its customers, and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against Counter-Claimants, all in amounts to be proven at trial.  (FACC ¶¶ 38, 45, 52.)

Sherwin-Williams takes the position, relying on *Robinson Helicopter*, that these are essentially contract damages for economic loss that, as such, can't give rise to a claim in tort.  That's a fair argument, but it relies on too fast a reading of the case.  As the Court reads *Robinson Helicopter*, the question is less whether the damages for contract and tort claims necessarily overlap, and more whether the conduct giving rise to the separate claims is distinct.  The economic loss rule doesn't bar tort claims for fraud or intentional misrepresentation if the allegedly tortious conduct is independent of the conduct constituting a breach.  *Robinson Helicopter*, 34 Cal.4th at 989.  *See also WeBoost Media*, 2014 WL 824297 at *5 ("Under the rule, parties alleging fraud or deceit in connection with a contract must establish tortious conduct independent of a breach of the contract—not just violation of a promise that undermines a party's expectations under the contract.").  One example of this is "where the contract was fraudulently induced," in which case the injured party can assert both contract and tort claims.  *Id.* at 989–90.  *See also Results ByIQ LLC v. Netcapital.com LLC*, 2013 WL 4835838 at *6 (N.D. Cal. Sept. 11, 2013) ("In this case, the jury found that Defendants had fraudulent induced Plaintiff to enter a contract via a false promise—that is enough to avoid application of the economic loss rule.").

While the Court has already said that John's fraud and misrepresentation claims aren't very well pled, this seems to be where it wants to go.  It wants to claim that Sherwin-Williams made a series of misrepresentations about the quality of its products that induced John's to both enter into a supply agreement and, later on, to not terminate that supply

1  agreement.  (FACC ¶¶ 11, 37, 44, 51.)  So, just as John's may be able to tighten up its fraud

2  and misrepresentation claims and plead them with more precision to satisfy Rule 9, the

3  Court finds it may also be able to plead them in  a way that avoids application of the

4  economic loss rule.  These claims are therefore **DISMISSED WITHOUT PREJUDICE**.

5        **C.      Covenant of Good Faith and Fair Dealing**

6        John's sixth counterclaim alleges a breach of the covenant of good faith and fair

7  dealing.  But at least under Ohio law, which the Court has already determined governs the

8  contract-based claims in this case, a straightforward breach of contract claim subsumes the

9  covenant-based claim.  *Gilchrist v. Saxon Mortgage Servs.*, 2013 WL 1091112 at *6 (Ohio

10 Ct. App. Mar. 14, 2013); *MERS v. Mosley*, 2010 WL 2541245 at *11 (Ohio Ct. App. June 24,

11 2010);  *Tabor Revocable Trust v. WDR Properties, Inc.*, 2010 WL 1840738 at *6 (May 7,

12 2010) ("With respect to counts two (breach of contract) and three (breach of covenant of

13 good faith and fair dealing) of appellant's counterclaim, we note that the covenant of good

14 faith is part of a contract claim, and does not stand alone as a separate cause of action from

15 a breach of contract claim.") (internal quotations and citation omitted); *Ireton v. JTD Realty*

16 *Investments, LLC*, 944 N.E.2d 1238, 1255 (Ohio Ct. Common Pleas 2010)

17        John's rebuttal to this is a California case, *Koehrer v. Superior Court*, holding that a

18 breach of contract *and* bad faith claim can co-exist, at least in the employment context where

19 the plaintiff alleges an unlawful firing.  181 Cal.App.3d at 1155, 1168–72 (Cal. Ct. App.

20 1986).  This is because the legal obligations underlying the respective claims have different

21 sources; the obligations underlying a contract claim come from the agreed-upon terms of the

22 contract, while the obligations underlying a bad faith claim derive from "the normative values

23 of society."  *Id.* at 1169.

24        Even assuming the Court looks to *Koehler* rather than the Ohio cases here, John's

25 claim is pled in too conclusory a manner.  It alleges that Sherwin-Williams "unfairly interfered

26 with JB Collision's right to receive the benefit of the Agreement by making false

27 representations regarding the quality of Sherwin-Williams's paint and related products to JB

28 Collision, and by supplying JB Collision with defective products." (FACC ¶ 54.)  These are

1    in essence, however, the very same allegations behind the breach of contract claim.  (*See*

2    FAC ¶¶ 22.)  The damages associated with the claims are also identical.  (*See* FACC ¶¶ 23,

3    55.)  Even under California law, there's no claim for breach of the covenant of good faith and

4    fair dealing under these circumstances.  It is simply duplicative of the breach of contract

5    claim.  *See Bionghi v. Metropolitan Water Dist.*, 70 Cal.App.4th 1358, 1370 (Cal. Ct. App.

6    1999) ("Here, Abacus's claim of breach of the implied covenant relies on the same acts, and

7    seeks the same damages, as its claim for breach of contract.").  The California Supreme

8    Court has even cast doubt over *Koehler*, announcing in a later case "a general rule

9    precluding tort recovery for noninsurance contract breach, at least in the absence of violation

10   of an independent duty arising from principles of tort law other than the bad faith denial of

11   the existence of, or liability under, the breached contract."  *Freeman & Mills, Inc. v. Belcher*

12   *Oil Co.*, 11 Cal.4th 85, 102 (1995) (internal quotations and citation omitted).

13          John's claim for breach of the covenant of good faith and fair dealing is **DISMISSED**

14   **WITH PREJUDICE**.

15          **D.     Unjust Enrichment**

16          John's final claim is for unjust enrichment.  Ordinarily, "the doctrine of unjust

17   enrichment cannot apply when an express contract exists."  *Bickham v. Standley*, 917

18   N.E.2d 330 at 335 (Ohio Ct. App. 2009).  This is because "[u]njust enrichment is an equitable

19   doctrine, not based on contract law but upon quasi-contract."  *Id.*

20          To overcome this, John's cites a case holding that "[a] claim for unjust enrichment

21   may be pled in the alternative when the existence of an express contract is in dispute and

22   may be maintained despite the existence of an express contract where there is evidence of

23   fraud, bad faith, or illegality."  *Cheers Sports Bar & Grill v. DirecTV, Inc.*, 563 F.Supp.2d 812,

24   819 (N.D. Ohio 2008).  The Court reads this in the disjunctive.  If the existence of an express

25   contract is up for debate, an unjust enrichment claim may be pled.  But even if the existence

26   of an express contract *isn't* up for debate, an unjust enrichment claim may be pled where

27   there are also allegations of fraud.  Sherwin-Williams tries to argue that because the supply

28   / /

1  agreement isn't in dispute John's unjust enrichment claim has to fail. That's only true with

2  respect to the first half of the *Cheers* holding.

3       Because the Court is allowing John's to tighten up its fraud and misrepresentation

4  claims, it will allow the unjust enrichment claim to remain for now.

5  **III.    Conclusion**

6       Two of John's counterclaims are **DISMISSED WITH PREJUDICE**—its claim for

7  breach of the implied warranties of merchantability and fitness for a particular purpose, as

8  well as its claim for breach of the covenant of good faith and fair dealing. Its claims for fraud

9  and concealment, intentional misrepresentation, negligent misrepresentation, and unjust

10  enrichment are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

11       The Court notes that John's shouldn't be surprised by the result here. It attached to

12  its opposition brief similar cases in which Sherwin-Williams was the plaintiff, in an attempt

13  only to show that it was "on notice of defects with its products, or at least on notice of

14  allegations of same." (Opp'n Br. at 2 n.1.) And yet in two of those cases the defendants

15  responded with counterclaims that the courts dismissed. *See, e.g., Sherwin-Williams Co.*

16  *v. Novak's Collision Center, Inc.*, 2013 WL 5500107 (E.D. Mo. Oct. 3, 2013) (dismissing

17  fraudulent and negligent misrepresentation counterclaims without prejudice under Missouri

18  law); *Sherwin-Williams Co. v. Bolton*, 2011 WL 1519135 (E.D. Mich. Apr. 20, 2011) (finding

19  that Ohio's economic loss rule barred counterclaims for fraud and misrepresentation). In the

20  one case brought against Sherwin-Williams, it overwhelming prevailed on summary

21  judgment. *See Weco* (granting summary judgment for Sherwin-Williams on claims asserted

22  against it for unfair business practices, misappropriation of trade secrets, intentional

23  interference with prospective economic advantage, and breach of contract).

24       John's second amended counterclaims must be filed within **TWO WEEKS OF THE**

25  **DATE THIS ORDER IS ENTERED**. This is, of course, not an imperative to file amended

26  counterclaims. The Court senses that Sherwin-Williams is mostly right that this is essentially

27  a breach of contract case, and that John's is putting up a kind of porcupine defense by firing

28  back with a multitude of tort claims. If John's doesn't believe it can amend its claims to the

1  Court's satisfaction, it may file amended counterclaims that simply omit them and Sherwin-

2  Williams may file an answer.

3  **IV.     Motion to Consolidate**

4          Finally, there is the question of whether to consolidate this case, *Sherwin-Williams v.*

5  *John's*, 13-CV-1947, with another case, *Sherwin-Williams v. JB Collision Services*, 13-CV-

6  1946.

7          First, the Court observes that the counterclaims in *JB Collision* and the briefing on the

8  motion to dismiss them are for all intents and purposes identical to the counterclaims and

9  briefing in this case.  For that reason, the Court's ruling above applies equally to the pending

10 motion to dismiss the counterclaims in *JB Collision*.  (*See* 13-CV-1946, Doc. No. 20.)

11         Second, the motion to consolidate filed by JB Collision in *JB Collision Services* is

12 **GRANTED**.  All it takes is "a common question of law or fact", Fed. R. Civ. P. 42(a), and the

13 two cases certainly have that even if there are subtle differences between them.  The Court

14 notes that Sherwin-Williams seems to not object to consolidation at this time anyway.

15 "Instead, Sherwin Williams submits that these matters should be consolidated for discovery

16 and motion practice, and the parties should reserve the issue of consolidation until after the

17 close of discovery." (Case No. 13-CV-1946, Doc. No. 17.)  There is no harm in consolidating

18 the cases now, however.  Rule 42(b) allows for separate trials even where cases have been

19 consolidated, and even after discovery has closed and summary judgment motions loom,

20 the parties can still make separate arguments in those motions with respect to the two

21 cases. But because Sherwin-Williams is amendable to consolidation for motion practice and

22 discovery, which is precisely where these two cases stand, the Court will consolidate them

23 at this time.

24         **IT IS SO ORDERED**.

25 DATED:  June 9, 2014

26                                                  *Larry A. Burns*

27                                          **HONORABLE LARRY ALAN BURNS**
                                            United States District Judge

28

- 14 -