UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>JB COLLISION SERVICES, INC., *et. al.*,<br><br>                Defendants,<br><br>and<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>JTT, INC., *et. al.*,<br><br>                Defendants. | Civil No. 13-CV-1946-LAB (WVG)<br>            13-CV-1947-LAB (WVG)<br><br>ORDER FOLLOWING DISCOVERY HEARING |

## I. INTRODUCTION

On July 23, 2014, Plaintiff The Sherwin-Williams Company (hereinafter "Plaintiff"), notified the Court of a discovery dispute involving Defendants' JB Collision Services, Inc., JJT, Inc., and John Tyczki (hereinafter "Defendants")

1

1  responses to Plaintiff's written discovery requests. Plaintiff's counsel represented to
2  the Court that counsel had met and conferred telephonically.

3  On July 24, 2014, this Court Ordered the parties to file a Joint Statement for
4  Determination of Discovery Dispute ("Joint Statement") by July 31, 2014, at 12:00 p.m.
5  (Doc. No. 44 at 2.) The Court set a Discovery Hearing to be held on August 8, 2014,
6  at 7:30 a.m. Id. In compliance with the Court's Order, the parties filed a Joint
7  Statement on July 31, 2014. (Doc. No. 45.) On August 8, 2014, at 7:30 a.m., the Court
8  convened a Discovery Hearing. Mr. Jeffrey Wilson and Mr. Michael Murray appeared
9  on behalf of Plaintiff, and Mr. John Nordlund appeared on behalf of Defendants.

10 **II. DISCUSSION**

11 **A. DISPUTE NO. 1 - CUSTOMER INFORMATION REDACTED**
12 **1. ARGUMENTS**

13 Plaintiff argues that Defendants have produced numerous discovery
14 documents such as repair orders and invoices, and they have redacted the identity of
15 vehicle owners, insurers, and other third parties. (Doc. No. 45 at 2.) Plaintiff contends
16 that the redacted information is highly relevant for many reasons, including Plaintiff's
17 need to investigate the circumstances that led to Defendants' submission of warranty
18 claims on behalf of vehicle owners. Id.

19 Defendants claim that they redacted the identifying information because they
20 are concerned with their customer's third-party privacy rights in their financial,
21 ownership, insurance, and contact information. (Doc. No. 45 at 2.) Defendants also
22 argue that they are concerned with potential third-party liability for disclosure of
23 private information without a Court Order. Id.

24 **2. COURT'S RULING**

25 **Defendants' objections are overruled. Defendants shall respond to**
26 **Plaintiff's requests.**

27 The Court finds that Plaintiff has the right to the identity of the vehicle owners
28 that Defendants claim had issues with Plaintiff's paint products, which is relevant to the

claims asserted in Defendants' Second Amended Counterclaim ("SACC"). (Doc. No. 36.)

## 1. RELEVANCE OF THE REQUESTED INFORMATION

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." U.S. ex rel. O'Connell v. Chapman University, 245 F.R.D. 646, 648 (C.D.Cal.2007) (internal quotation omitted). Federal Rule of Civil Procedure 26(b)(1) offers guidance as to the scope of discovery permitted in an action:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1).

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir.1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, 2009 WL 1390794 at * 1 (S.D.Cal. May 14, 2009) (internal citation omitted). A party opposing discovery is "required to carry a heavy burden of showing" why discovery should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).

Plaintiff asserts that the information sought here, which includes the identity of vehicle owners, insurers, and other third parties listed in Defendants' repair orders and invoices, is relevant to its defense of Defendants' claims of breach of contract, fraud, and misrepresentation. The Court agrees, as the identifying information on Defendants' repair orders and invoices appears reasonably calculated to lead to the discovery of admissible evidence. Defendants do not dispute the relevancy of this

1  information. They simply assert that they do not believe that this information can be
2  disclosed absent a Court Order.
3        In sum, the information sought by Plaintiff is relevant and discoverable.
4  **B. DISPUTE NO. 2 - ROG NO. 12**
5  **1. ARGUMENTS**
6        Plaintiff's Interrogatory ("ROG") No. 12 asks Defendants to identify all paint
7  and related products purchased by Defendants from any manufacturer, distributor, or
8  seller other than Plaintiff, from January 2013 until the present, including but not limited
9  to the products, prices, dates of delivery, dates of purchase, dates of use, and name of
10 manufacturer, distributor or seller. (Doc. No. 45 at 2.) Plaintiff argues that the
11 information sought is highly relevant, as Defendants have placed at issue the identity
12 and quality of paint that they purchased from other suppliers after terminating
13 Plaintiff's contracts. Plaintiff argues that Defendants rely on alleged defects in its
14 products as justification for terminating the contracts with Plaintiff, and as the basis for
15 the claims asserted in Defendants' SACC. Id. Plaintiff contends that Defendants
16 specifically allege that when they switched to a competitor's paint (Spies-
17 Hecker/Dupont) in March of 2013, they "did not experience these problems." Id.
18       Further, Plaintiff contends that Defendants were in an exclusive supply
19 contract for the use of Spies-Hecker paint when Defendant JB Collision entered into
20 the exclusive supply contract with Plaintiff, and that Defendants were sued in late 2012
21 for breaching that prior Spies-Hecker contract. (Doc. No. 45 at 4.) Plaintiff argues that
22 the matter was referred to arbitration in early 2013, and that Defendants stopped
23 purchasing Plaintiff's paint and resumed purchasing Spies-Hecker paint around that
24 time. Id. Thus, Plaintiff argues, it is entitled to investigate whether Defendants had
25 motives other than the quality of Plaintiff's products when they resumed purchasing
26 Spies-Hecker paint. Id.
27       Defendants argue that the requested information is irrelevant to the issues in
28 this case, and that they have stated in verified responses that they solely purchased and

      13CV1946, 13CV1947

used Plaintiff's paint products from September 2008 through March 2013.[1] (Doc. No. 45 at 4.) They contend that their purchases from other manufacturers after the termination of the agreements with Plaintiff are not probative to prove contract damages, and that the product information that Plaintiff seeks is not probative as to whether Defendants have had similar problems with subsequent manufacturers. Id. Defendants argue that the damages Plaintiff seeks are readily ascertainable from the contract terms and the parties' course of business. Id.

Further, Defendants assert that Plaintiff's statements regarding Defendants' prior relationship with Spies-Hecker are incorrect, and that Defendant JB Collision had a contractual relationship with Keystone Automotive Industries, Inc. ("Keystone"), which involved Spies-Hecker products, until approximately late July 2008 or early September 2008. (Doc. No. 45 at 4.) Defendants state that Defendant JB Collision terminated the contract with Keystone in order to enter into the September 2008 agreement with Plaintiff. Id. They contend that Keystone did not file suit for the alleged 2008 breach of that contract until September 2012, and the four year statute of limitations was Defendant JB Collision's primary defense. Id. Defendants argue that they did not stop exclusively purchasing Plaintiff's paint products until March 2013, which they claim was after Defendant JB Collision completed its contract term. Id. at 4-5. Additionally, Defendants object that ROG No. 12 seeks confidential, proprietary, and trade secret information of Plaintiff's competitors, including, but not limited to, pricing information and discounts. Id. at 5.

### 2. COURT'S RULING

**Defendants' objections are overruled. Defendants shall respond to Plaintiff's ROG No. 12. If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response.**

---

[1] ROG No. 12 seeks information during the time frame of January of 2013 to the present. (Doc. No. 45 at 2.)

As discussed above, relevance for purposes of discovery is defined very broadly." <u>Garneau</u>, 147 F.3d at 812. Rule 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and the information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

The Court finds that the information sought by Plaintiff is relevant to the claims asserted in Defendants' SACC, as Defendants claim breach of contract, concealment, fraud, intentional and negligent misrepresentation, and unjust enrichment by Plaintiff. (Doc. No. 36.) Given that Defendants terminated the Keystone contract early and entered into a contract with Plaintiff, the Court notes the suspicious circumstances involving the lawsuit against Defendants for breach of that previous contract, and Defendants' subsequent return to purchasing Spies-Hecker products.

**C. <u>DISPUTE NO. 3 - ROG. NO. 7</u>**

**1. <u>ARGUMENTS</u>**

Plaintiff's ROG No. 7 asks Defendants to identify all instances of Defendants repainting vehicles because of alleged quality issues with Plaintiff's products. (Doc. No. 45 at 5.) Defendants object on the grounds that ROG No. 7 is vague, ambiguous, and unduly burdensome. <u>Id.</u> They state that the requested information is available in documents that they produced in response to Plaintiff's Requests for Production of Documents ("RFPs"), which were served concurrently with these ROGs, and it is unnecessary and unduly burdensome for Defendants to undertake the expense and effort of stating it in a ROG response.

Plaintiff argues that ROG No. 7 gets to the heart of Defendants' $20 million counterclaim, which is premised upon Defendants' need to repaint vehicles because of alleged quality problems with Plaintiff's paint products. (Doc. No. 45 at 5.) Plaintiff states that Defendants' SACC alleges that, throughout the parties' contractual relationship, Plaintiff provided Defendants with free paint products to re-paint vehicles due to the poor quality of its paint products, but Defendants were forced to absorb the

1  labor costs of repainting the vehicles.  Id; citing SACC 20(g).  Plaintiff notes that
2  Defendants allege that they terminated the agreements with Plaintiff because of the
3  numerous customer complaints, necessary re-repairs, and re-paintings of customer
4  vehicles due to the low quality of its products, and Plaintiff's failure to effectively
5  correct the quality issues.  Id; citing SACC 20(g).

6  Plaintiff contends that, if Defendants' re-painting and/or re-repairing customer
7  vehicles is limited to the approximately 30 warranty claims they submitted, then
8  Defendants must state as much in a verified ROG response, and provide the information
9  requested for the approximately 30 instances of repainting.  (Doc. No. 45 at 7.)

10  Defendants argue that they cannot presently recollect all instances in which
11  they repainted vehicles due to quality defects in Plaintiff's automotive paint products.
12  (Doc. No. 45 at 7.)  They contend that they produced all warranty work invoices, which
13  provide information on such repainting jobs.  Id.  Therefore, Defendants claim, it is
14  unduly burdensome for them to undertake the task of reviewing the documents and
15  listing the instances for Plaintiff when it can perform the same task.  Id.  Nonetheless,
16  Defendants state that they will provide a list of repair orders, dates, and amount owed
17  by Plaintiff for the warranty work on repaint jobs for which Defendants do have
18  documentation.  Id.

19  However, Defendants argue that they do not intend to limit the number of
20  vehicle repaints caused by defects in the quality of Plaintiff's AWX paint products to
21  those for which warranty claims have been documented.  (Doc. No. 45 at 7.)  They
22  claim that those documented in the warranty claims are some, but not all, of such
23  re-paintings, but they did not maintain specific documentation of the repainting jobs as
24  a matter of course prior to the termination of the agreements with Plaintiff.  Id. at 7-8.
25  Defendants contend that they are only seeking damages as to those repainting jobs for
26  which there are warranty claims, and any future necessary warranty work, the need for
27  which is continuous and ongoing as customers present with defective paint jobs caused
28  by Plaintiff's AWX paint products.  Id. at 8.  Defendants claim that they expressly

stated during meet and confer efforts that they are willing to provide supplemental responses stating the above.  Id.

## 2. COURT'S RULING

**Defendants' objections are overruled.  Defendants shall respond to Plaintiff's ROG No. 7.**

The Court finds that ROG No. 7 goes to the heart of this lawsuit, as Defendants claim that they had to repaint vehicles due to Plaintiff's poor quality paint products.  The Court also acknowledges that Defendants have asserted that they did not retain documents.  If Defendants only have information related to the warranty claims, then Defendants shall state that they do not have any other documents, and that they did not keep these records.  If records ever do become available, Defendants shall immediately supplement their response to ROG No. 7.

If they have not done so already, Defendants shall provide Plaintiff with a list of repair orders, dates, and amounts owed by Plaintiff for the warranty work on repainting jobs for which Defendants do have documentation.

## D. DISPUTE NO. 4 - RFP NO. 10

### 1. ARGUMENTS

Plaintiff's RFP No. 10 seeks all documents which constitute, reflect upon, or relate to all paint and related product purchases by Defendants from any manufacturer or seller other than Plaintiff, from September 2008/May 2011 until the present.  (Doc. No. 45 at 8.)  Defendants object to this request on the grounds that RFP No. 10 seeks information and/or documents protected by attorney-client and/or work product privileges, seeks confidential information of third-parties, such as product pricing and proprietary information, and is compound, overbroad, vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Id. at 8-9.  Further, Defendants argue that the request seeks documents regarding non-Sherwin-Williams paint products for a period of time after the termination of the supply agreement with Plaintiff.  Id. at 9.

Defendants also responded that, for the time period of September 10, 2008, to March 2013, Defendant JB Collision, and from May 2011 to March 2013, Defendant JJT, exclusively purchased and used Plaintiff's paint and related products, and, therefore no responsive documents exist. (Doc. No. 45 at 9.) Defendants stated that, for the period of time thereafter, no documents will be produced. Id.

Plaintiff sets forth the same arguments that it asserts in support of ROG No. 12. (Doc. No. 45 at 9-10.)

### 2. COURT'S RULING

**Defendants' objections are overruled. Defendants shall respond to Plaintiff's RFP No. 10. If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response.**

As discussed above, relevance for purposes of discovery is defined very broadly." Garneau, 147 F.3d at 812. Rule 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and the information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

The Court finds that the information sought by Plaintiff is relevant to the claims asserted in Defendants' SACC, as Defendants claim breach of contract, concealment, fraud, intentional and negligent misrepresentation, and unjust enrichment by Plaintiff. (Doc. No. 36.) Given that Defendants terminated the Keystone contract early and entered into a contract with Plaintiff, the Court notes the suspicious circumstances involving the lawsuit against Defendants for breach of that previous contract, and Defendants' subsequent return to purchasing Spies-Hecker products.

### E. POSSIBLE DISPUTE REGARDING DOCUMENT DESIGNATIONS

During the Discovery Hearing, Defendants notified the Court that they disagree with some of the "Attorneys' Eyes Only" designations made by Plaintiff during its document production. Defendants sought guidance from the Court on how to proceed with this dispute.

The Court hereby ORDERS the parties to meet and confer in good faith in an attempt to resolve the dispute. If a dispute remains after good faith meet and confer efforts, the parties shall contact the Court to seek guidance on how to proceed.

Counsel are reminded that the protective order in place in this action allows for a producing party to designate as "Highly Confidential/Attorneys' Eyes Only," any confidential information or material which it <u>reasonably believes</u> constitutes a trade secret or other highly confidential research, development, or commercial information, the disclosure of which to the other party or public could cause the producing party competitive harm. (Protective Order, Doc. No. 35 at 3.) The parties are on notice that, should a dispute regarding the designation of documents be brought to the Court's attention, the Court will not look favorably upon the over-designation or blanket designations of documents.

### III. CONCLUSION

On or before **August 27, 2014**, Defendants shall produce to Plaintiff all discovery responses in compliance with this Order.

IT IS SO ORDERED.

DATED:  August 15, 2014

_____
Hon. William V. Gallo
U.S. Magistrate Judge